IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**ROBERT VANDE KROL,**
*Petitioner Employee,*

*v.*

**THE INDUSTRIAL COMMISSION OF ARIZONA,**
*Respondent,*

**SUPERSTITION FIRE & MEDICAL,**
*Respondent Employer,*

**BENCHMARK INSURANCE,**
*Respondent Insurance Carrier.*

No. CV-23-0211-PR
**Filed March 26, 2025**

Special Action–Industrial Commission
ICA Claim No. 20210280125
Carrier Claim No. 7138292
The Honorable Amy L. Foster, Administrative Law Judge

Opinion of the Court of Appeals, Division One
255 Ariz. 495 (App. 2023)
**VACATED AND REMANDED**

COUNSEL:

Christopher Norton, Norton & Brozina, P.C., Phoenix; and Elizabeth L. Fleming (argued), Maile Lei Belongie, Udall Law Firm, LLP, Tucson, Attorneys for Benchmark Insurance

Thomas C. Whitley (argued), Nicholas C. Whitley, Taylor & Associates P.L.L.C., Phoenix, Attorneys for Robert Vande Krol

D. Andrew Gaona, Austin C. Yost, Coppersmith Brockelman PLC, Phoenix,
Attorneys for Amici Curiae International Association of Fire Fighters and
Professional Fire Fighters of Arizona

---

JUSTICE KING authored the Opinion of the Court, in which CHIEF
JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ, and JUSTICES BOLICK,
BEENE, and BRUTINEL[*] (RETIRED) joined.   JUSTICE MONTGOMERY
authored a dissenting opinion.

---

JUSTICE KING, Opinion of the Court:

¶1        An individual who files a claim for workers' compensation
benefits has the burden "to show affirmatively all of the material elements
necessary to sustain an award." *In re Bedwell's Estate*, 104 Ariz. 443, 444
(1969).   This includes the requirement to establish that an occupational
disease   arose   out   of   the   claimant's   employment.      A.R.S.
§§ 23-901(13)(c), -901.01(A)(1)–(6).

¶2        In 2001, the legislature created a new statutory presumption
for firefighters, which eased their burden in proving causation when
seeking benefits for certain diseases, infirmities, and impairments.
§ 23-901.01 (2001) ("2001 statute"); 2001 Ariz. Sess. Laws ch. 192, § 1 (1st
Reg. Sess.).   Under the 2001 statute, those enumerated conditions were
presumed to be occupational diseases that arose out of employment if the
firefighter established the elements in § 23-901.01(B)(1)–(3) (2001).   In 2017,
the legislature added a new provision in § 23-901.01(F) to specify the
evidence needed to rebut that statutory presumption.   § 23-901.01 (2017)
("2017 statute"); 2017 Ariz. Sess. Laws ch. 318, § 1 (1st Reg. Sess.).   Then,
in 2021, the legislature relaxed the burden on firefighters to establish the
statutory presumption and also heightened the evidentiary standard to
rebut the presumption.   A.R.S. § 23-901.09 (2021) (effective Sept. 29, 2021)
("2021 statute"); 2021 Ariz. Sess. Laws ch. 229, §§ 5–6 (1st Reg. Sess.).

¶3        In January 2021, firefighter Robert Vande Krol filed a
workers' compensation claim, identifying his injury as brain cancer and the

---

[*]   Justice Brutinel retired after oral argument in this case but nevertheless
participated in deciding this Opinion.

date of injury as October 28, 2020. Vande Krol contends that the 2021 statute applies to his workers' compensation claim, even though the 2021 statute became effective nearly a year after his injury and eight months after he filed his claim. *See* 2021 Ariz. Sess. Laws ch. 229, § 6 (1st Reg. Sess.); § 23-901.09 (2021) (effective Sept. 29, 2021).

¶4          We conclude that the 2021 statute does not apply to Vande Krol's workers' compensation claim. There is nothing in the 2021 statute that expressly declares it to be retroactive. *See* A.R.S. § 1-244 ("No statute is retroactive unless expressly declared therein."). Further, the statutory presumption is a substantive law, and the substantive right of the employer and insurer vested at the time Vande Krol filed his workers' compensation claim. Therefore, the 2017 statute applies.

**BACKGROUND**

¶5          Superstition Fire and Medical District ("Superstition") hired Vande Krol in 2002. Vande Krol worked for Superstition as a firefighter and engineer for eighteen years. In the course of his employment, he was exposed to smoke, soot, and firefighting foam used to extinguish fires.

¶6          In August 2020, Vande Krol participated in a routine, whole-body screening. The screening found a mass in Vande Krol's brain. In October 2020, Vande Krol underwent brain surgery (a right craniotomy) to remove the mass. Vande Krol was diagnosed with oligodendroglioma, a rare form of brain cancer. After the surgery, he experienced headaches, vertigo, vision deficits, and memory problems.

¶7          In January 2021, Vande Krol filed a workers' compensation claim identifying his employer as Superstition, his injury as brain cancer, and the date of injury as October 28, 2020. Superstition's insurer, Benchmark Insurance Company ("Benchmark"), denied Vande Krol's claim on February 18, 2021.[1] On May 4, 2021, Vande Krol requested a hearing before an administrative law judge ("ALJ") with the Industrial Commission of Arizona ("ICA"). The ALJ held an evidentiary hearing over three non-consecutive days beginning on October 5, 2021.

---

[1] We collectively refer to Superstition and Benchmark as "Respondents." We collectively refer to employers and insurance carriers generally in workers' compensation cases as "respondents."

¶8        At the hearing, Vande Krol argued his brain cancer was an occupational disease that qualified him for workers' compensation benefits. In an effort to establish a connection between his brain cancer and his work as a firefighter, Vande Krol argued that his cancer was caused by exposure to (1) smoke and soot, (2) firefighting foam, (3) diesel fumes from fire engines, and (4) a cell tower located near his fire station.

¶9        The ALJ heard testimony from experts Dr. Gary Smith and Dr. Peter Ferrara.   Dr. Smith testified there was a "high probability" that Vande Krol's previous workplace exposures caused his brain cancer.   Dr. Ferrara testified that the only known cause of oligodendroglioma is ionizing radiation, and Vande Krol's record did not show exposure to that form of radiation.

¶10        Respondents argued that the 2017 statute applied to Vande Krol's workers' compensation claim because this statutory version was in effect when Vande Krol received his cancer diagnosis and when he filed his claim.   The 2017 statute provided, in relevant part: "Any disease, infirmity or impairment of a firefighter's . . . health that is caused by brain . . . cancer . . . and that results in disability or death is presumed to be an occupational disease . . . and is deemed to arise out of employment" if all of the following apply:

> 1. The firefighter . . . passed a physical examination before employment and the examination did not indicate evidence of cancer.

> 2. The firefighter . . . was assigned to hazardous duty for at least five years.

> 3. The firefighter . . . was exposed to a known carcinogen as defined by the international agency for research on cancer and informed the department of this exposure, and the carcinogen is reasonably related to the cancer.

4

§ 23-901.01(B)–(C) (2017). [2] The presumption "may be rebutted by a preponderance of the evidence that there is a specific cause of the cancer other than an occupational exposure to a carcinogen as defined by the international agency for research on cancer." § 23-901.01(F) (2017).

¶11 Vande Krol had apparently passed a physical examination before employment (which did not indicate evidence of cancer) and was assigned to hazardous duty for at least five years. *See* § 23-901.01(C)(1)–(2) (2017). But Respondents argued that his workers' compensation claim should be denied under the 2017 statute because Vande Krol "could not identify any specific exposure to a known carcinogen," and there was "no credible evidence reasonably linking a carcinogen to which he was allegedly exposed to his brain cancer (oligodendrogliomas)." *See* § 23-901.01(C)(3) (2017).

¶12 Conversely, Vande Krol argued that his claim was governed by the 2021 statute, which was signed into law on April 14, 2021, and took effect on September 29, 2021, days before the start of the evidentiary hearing. *See* 2021 Ariz. Sess. Laws ch. 229, § 6 (1st Reg. Sess.); § 23-901.09 (2021). Vande Krol reasoned that the 2021 statute controlled because it went into effect before a final determination on compensability had been made.

¶13 Under the 2021 statute, the presumption applies if both:

1. The firefighter . . . passed a physical examination before employment and the examination did not indicate evidence of cancer.

2. The firefighter . . . was assigned to hazardous duty for at least five years.

§ 23-901.09(B) (2021). Thus, the 2021 statute removed the requirement that, for the presumption to apply, the claimant must prove that he or she was exposed to a known carcinogen as defined by the international agency for research on cancer, and the carcinogen is reasonably related to the

---

[2] The 2017 and 2021 statutes require a firefighter to prove an additional element if the firefighter has certain diagnosed conditions that are not relevant here. *See* §§ 23-901.01(C)(4) (2017), -901.09(B)(3) (2021).

cancer. The 2021 statute also heightened the evidentiary standard for respondents to overcome the presumption. Instead of a "preponderance of the evidence," the presumption can only be rebutted "by clear and convincing evidence that there is a specific cause of the cancer other than an occupational exposure to a carcinogen as defined by the international agency for research on cancer." § 23-901.09(E) (2021).

¶14        Vande Krol claimed that he was entitled to workers' compensation benefits under the 2021 statute because he established the two elements of the presumption, and Respondents failed to prove by clear and convincing evidence that there is a specific cause of Vande Krol's cancer other than his occupational exposure to a carcinogen. *See* § 23-901.09(A)–(B), (E) (2021). Alternatively, Vande Krol argued that, even if the 2017 statute applied, he was entitled to benefits because he established the presumption by presenting evidence of his exposure to known carcinogens that were reasonably related to his brain cancer, and Respondents failed to rebut the presumption by a preponderance of the evidence. *See* § 23-901.01(C), (F) (2017).

¶15        The ALJ issued a written decision. In determining which statutory version applied to Vande Krol's claim, the ALJ cited the legislature's declaration in § 1-244 that "[n]o statute is retroactive unless expressly declared therein." The ALJ observed that there is no provision in the 2021 statute making the changes retroactive, and thus the 2021 statute can only apply to claims that arise after its effective date. Because Vande Krol identified his injury date as October 28, 2020, the ALJ determined that the 2017 statute applied to his claim.

¶16        Applying the 2017 statute, the ALJ concluded that Vande Krol satisfied the first two elements of the statutory presumption. Vande Krol (1) was a firefighter who passed a physical examination before employment and the examination did not indicate evidence of cancer, and (2) was assigned to hazardous duty for at least five years. *See* § 23-901.01(C)(1)–(2) (2017). But the ALJ determined that Vande Krol failed to establish the third element in the 2017 statute, as his experts "did not provide a link between a specific carcinogen and the specific cancer [Vande Krol] has." *See* § 23-901.01(C)(3) (2017). The ALJ explained that while there is not much research regarding the causes of oligodendroglioma, "[t]he only known cause is ionizing radiation, which is not present in this case." According to the ALJ, Vande Krol "has not established by [a]

6

preponderance of the evidence that he sustained a compensable injury on October 28, 2020" and his "claim is not compensable." Vande Krol filed a request for review, and the ALJ affirmed the original decision.

¶17 The court of appeals disagreed with the ALJ as to which version of the statutory presumption applied. *Vande Krol v. Indus. Comm'n*, 255 Ariz. 495, 505 ¶ 43 (App. 2023). The court concluded that the 2021 statute applied to Vande Krol's workers' compensation claim, citing the 2021 statute's text that specifies who the presumption applies to, the fact that the 2021 statute became effective before Vande Krol's evidentiary hearing, and the court's determination that the statutory presumption was procedural in nature. *Id.* at 501–05 ¶¶ 22–43. According to the court, application of the 2021 statute to Vande Krol's claim did "not result in an impermissible retroactive application." *Id.* at 498 ¶ 3. Because the ALJ did not apply the 2021 statute, the court set aside the ALJ's award of non-compensation. *Id.* at 505 ¶ 43.

¶18 We granted review because determining which version of the statutory presumption applies to workers' compensation claims is an issue of statewide importance that is likely recurring. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶19 When reviewing the findings and conclusions in a workers' compensation case, we "defer to the ALJ's factual findings but review questions of law de novo." *Special Fund Div. v. Indus. Comm'n*, 252 Ariz. 267, 269 ¶ 6 (App. 2021). The interpretation and application of a statute presents questions of law we review de novo. *Voice of Surprise v. Hall*, 255 Ariz. 510, 513 ¶ 11 (2023).

## A. The Legislature Amended Arizona's Workers' Compensation Scheme To Create A Statutory Presumption For Certain Workers.

¶20 The Arizona Constitution mandates that the "legislature shall enact a workmen's compensation law" providing compensation for an employee's personal injury or death "from any accident arising out of and in the course of, such employment." *See* Ariz. Const. art. 18, § 8. The legislature enacted that statutory scheme in title 23, chapter 6. *See* A.R.S. §§ 23-901 to -1105.

¶21        In § 23-901(13)(c), the definition of "[p]ersonal injury by accident arising out of and in the course of employment" includes "[a]n occupational disease that is due to causes and conditions characteristic of and peculiar to a particular trade, occupation, process or employment, and not the ordinary diseases to which the general public is exposed." Generally, an occupational disease under § 23-901(13)(c) is deemed to arise out of employment if the claimant establishes all six requirements in A.R.S. § 23-901.01(A)(1)–(6).  *See In re Bedwell's Estate*, 104 Ariz. at 444.  But, as discussed, the legislature opted to eliminate the standard causation approach for firefighters with certain diseases, infirmities, and impairments, and replace it with a statutory presumption instead.

**B.  The Law Presumes That Statutes Do Not Apply Retroactively.**

¶22        One longstanding canon of construction is that "statutes are presumed to have a prospective and not a retroactive effect."  *Gietz v. Webster*, 46 Ariz. 261, 267 (1935).  Stated otherwise, the law presumes that a statute applies only prospectively from the effective date of the statute.

¶23        This "presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic.  Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted."  *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (footnote omitted).  "For that reason, the 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'"  *Id.* (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (Scalia, J., concurring)).

¶24        Notably, this "antiretroactivity principle finds expression in several provisions of our Constitution."  *Id.* at 266 (discussing the *Ex Post Facto* Clause, *see* U.S. Const. art. I, § 9, cl. 3; the prohibition on state laws "impairing the Obligation of Contracts," *see* U.S. Const. art. I, § 10, cl. 1; the Fifth Amendment's Takings Clause, *see* U.S. Const. amend. V; the prohibition on "Bills of Attainder," *see* U.S. Const. art. I, § 9, cl. 3; and the Due Process Clause, *see* U.S. Const. amend. V).  "These provisions demonstrate that retroactive statutes raise particular concerns" with respect

to the legislature's ability "to sweep away settled expectations suddenly and without individualized consideration." *Id.*

## C. The Legislature Did Not Expressly Declare That The 2021 Statute Should Be Applied Retroactively.

¶25 The legislature has specifically directed that "[n]o statute is retroactive unless expressly declared therein." § 1-244. Thus, when the legislature expressly declares that a statute is retroactive, the presumption against retroactivity does not apply. *See Aranda v. Indus. Comm'n*, 198 Ariz. 467, 470 ¶ 10 (2000) ("Statutes must contain an express statement of retroactive intent before retroactive application may occur."); *San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 205 ¶ 14 (1999) ("It is true . . . that § 1-244 requires an express statement of retroactive intent before a statute will be considered retroactive."); *see also City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, 549 ¶ 16 (2005) (noting "the settled rule" that "absent an express legislative statement to the contrary, an act . . . does not apply to a suit pending at the time the act becomes effective"). There is a clear benefit in requiring the legislature to provide an express statement of retroactive intent. Doing so helps ensure that the legislature has weighed the benefits of a statute applying retroactively against any potential unfairness or negative effect on private rights.

¶26 The legislature knows how to provide for the retroactivity of measures that it enacts. In fact, the legislature included several express retroactivity provisions in acts passed during the 2021 legislative session. *See, e.g.*, 2021 Ariz. Sess. Laws ch. 43, § 3 (1st Reg. Sess.) ("This act applies retroactively to from and after December 31, 2020."); 2021 Ariz. Sess. Laws ch. 242 § 5 (1st Reg. Sess.); 2021 Ariz. Sess. Laws ch. 375 § 15 (1st Reg. Sess.); 2021 Ariz. Sess. Laws ch. 383 § 6 (1st Reg. Sess.); 2021 Ariz. Sess. Laws ch. 401 § 7 (1st Reg. Sess.). The 2021 statute, however, does not contain an express retroactivity provision, either in the statutory text or session law. § 23-901.09 (2021); 2021 Ariz. Sess. Laws ch. 229 §§ 5–6 (1st Reg. Sess.).

¶27 Even so, it is "not necessary that the legislature use the expression, 'this statute shall be retroactive,' or any similar one," to accomplish the purpose of retroactivity. *Schuster v. Schuster*, 42 Ariz. 190, 199 (1933). "Any language that shows a legislative purpose to bring about this result is sufficient." *Id.* "Declarations of intent may be helpful in interpretation, but the text of a measure must be considered first and

foremost." *San Carlos Apache Tribe*, 193 Ariz. at 204–05 ¶ 14 (concluding that there was "an overall legislative intent to apply all of the statutes retroactively" where "several of the statutes cannot sensibly be applied prospectively").

**¶28**		Vande Krol and amici contend that the 2021 statute contains express retroactive language.   They point to language in the 2021 statute which states that the presumption "applies to both of the following: 1. Firefighters . . . currently in service.   2. Former firefighters . . . who are sixty-five years of age or younger and who are diagnosed with a cancer . . . not more than fifteen years after the firefighter's . . . last date of employment as a firefighter."   *See* § 23-901.09(C) (2021).   They claim that the 2021 statute ties its applicability to a former firefighter's age and the relationship between the date of diagnosis and the last date of employment; and there is no exception to such application where the claim and date of injury occurred before the 2021 statute's effective date.

**¶29**		We disagree that § 23-901.09(C)(2) (2021) contains an express declaration of retroactivity for a former firefighter like Vande Krol.   *See* § 1-244.   Section 23-901.09(C)(2) simply defines the general class of people eligible for the statutory presumption (the "who") and provides an end date for their eligibility (a statute of limitations of sort).   It does not, however, express when the statutory presumption applies or that it should have retroactive application.   *See Landgraf*, 511 U.S. at 288 (Scalia, J., concurring) ("[R]efinement and subtlety are no substitute for clear statement.").   And although the legislature did not create an exception to application of the 2021 statute where the claim and date of injury occurred before the effective date of the statute, our inquiry is not focused on what is *not* in the 2021 statute.   Instead, our inquiry is on whether retroactivity is "expressly declared" in the statute.   *See* § 1-244.

**¶30**		The 2021 statute fails to evince the legislature's intent that it apply retroactively.   It does not contain express retroactive language or any other language indicating that the legislature intended the 2021 statute to apply to claims pending when the 2021 statute became effective.   The text does not show any legislative purpose to bring about the result of retroactivity or "an overall legislative intent to apply [the 2021 statute] retroactively."   *See San Carlos Apache Tribe*, 193 Ariz. at 204–05 ¶ 14; *Schuster*, 42 Ariz. at 199.   In sum, there is nothing in the 2021 statute that

overcomes the presumption against retroactivity.[3]   *See* § 1-244.

**D.  The Presumption In The 2021 Statute Is Substantive In Nature.**

**¶31**              "[T]he absence of any legislative declaration about retroactivity does not end our inquiry."   *State v. Fell*, 210 Ariz. 554, 560 ¶ 22 (2005).   Although § 1-244 categorically applies to all statutes, this Court has held that "[e]nactments that are procedural only, and do not alter or affect earlier established substantive rights may be applied retroactively. Even if a statute does not expressly provide for retroactivity, it may still be applied if merely procedural because litigants have no vested right in a given mode of procedure."   *Aranda*, 198 Ariz. at 470 ¶ 11 (internal citations omitted); *see also Bouldin v. Turek*, 125 Ariz. 77, 78 (1979); *San Carlos Apache Tribe*, 193 Ariz. at 205 ¶ 15.   But the legislature "may not disturb vested substantive rights by retroactively changing the law that applies to completed events."   *San Carlos Apache Tribe*, 193 Ariz. at 205 ¶ 15.   Thus, we must now determine whether the presumption in the 2021 statute is procedural or substantive in nature.

**¶32**              "Substantive law 'creates, defines and regulates rights.'" *Aranda*, 198 Ariz. at 470 ¶ 12 (quoting *Hall v. A.N.R. Freight Sys., Inc.*, 149 Ariz. 130, 138 (1986)).   Conversely, a procedural law "prescribes the method of enforcing such rights or obtaining redress."   *Hall*, 149 Ariz. at 138 (quoting *Allen v. Fisher*, 118 Ariz. 95, 96 (App. 1977)); *see also Aranda*, 198 Ariz. at 470 ¶ 12 (explaining a procedural law "relates to the manner and means by which a right to recover is enforced or provides no more than the method by which to proceed"); *Daou v. Harris*, 139 Ariz. 353, 358 (1984) ("[T]he methods of perfecting and processing such rights are procedural."); *State v. Birmingham*, 96 Ariz. 109, 110 (1964) ("[T]he adjective, remedial or procedural law is that which prescribes the method of enforcing the right or obtaining redress for its invasion.   It is often said the adjective law pertains to and prescribes the practice, method, procedure or legal machinery by which the substantive law is enforced or made effective.").

---

[3]   Interpreting the 2021 statute in this manner does not nullify the express language of § 23-901.09(C)(2) (2021), as amici claim. Section 23-901.09(C)(2) (2021) is still given effect in the prospective application of the 2021 statute.

¶33        Before us is a unique presumption that certain enumerated diseases, infirmities, and impairments are *deemed* occupational diseases arising out of employment, entitling a firefighter to workers' compensation benefits, as long as that firefighter proves certain enumerated elements and respondents do not rebut the presumption.   *See* § 23-901.01(B), (C) (2017); § 23-901.09(A)–(B) (2021).

¶34        In evaluating the nature of the presumption in the 2021 statute, we begin with this Court's observation in *State v. Grilz*, 136 Ariz. 450 (1983), that the United States Supreme Court has "identified several kinds of presumptions":

> A "permissive presumption" is really nothing more than an inference. It allows the trier of fact to infer the presumed fact from proof of the basic facts, but places no burden of any kind on the defendant. A "mandatory presumption" requires the trier of fact to find the presumed fact upon proof of the basic fact unless the defendant has presented some evidence to rebut the presumption. The class of mandatory presumptions is further divided into two parts. There are mandatory presumptions that merely shift the burden of production to the defendant. Once the defendant meets that burden the ultimate burden of proof is on the prosecution. The second type of mandatory presumption entirely shifts the burden of proof to the defendant. Finally, a "conclusive presumption" is simply a rule of law. It is [irrebuttable] and requires the trier of fact to find the presumed fact once the basic facts are established.

*Id*. at 457 (internal citations omitted) (citing *Sandstrom v. Montana*, 442 U.S. 510 (1979); *County Court of Ulster County v. Allen*, 442 U.S. 140 (1979)).

¶35        Arizona case law has generally described evidentiary presumptions as procedural in nature.   For example, in *Flores v. Tucson Gas, Electric Light & Power Co.*, 54 Ariz. 460 (1939), this Court explained that a "presumption is not evidence of anything, and only relates to a rule of law as to which party shall first go forward and produce evidence sustaining a matter in issue." *Id*. at 463, 466 (quoting *Peters v. Lohr*, 124 N.W. 853, 855 (S.D. 1910)); *see also Grilz*, 136 Ariz. at 455 ("[T]he presumption of sanity is a procedural device that places on the defendant the burden of producing

evidence sufficient to raise a reasonable doubt as to sanity."); *Golonka v. Gen. Motors Corp.*, 204 Ariz. 575, 590 ¶ 50 (App. 2003) ("Arizona courts generally hold that a presumption is a procedural device that shifts the burden of producing contrary evidence to the party opposing the presumed fact but leaves the burden of persuasion on the proponent of the evidence."); Ariz. R. Evid. 301 ("In a civil case, unless a statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally."). Nevertheless, we must approach our analysis of whether the presumption in the 2021 statute is procedural or substantive "with the goal of determining, absent labels, the true function of the statute." *See Seisinger v. Siebel*, 220 Ariz. 85, 93 ¶ 31 (2009) (citing *Readenour v. Marion Power Shovel*, 149 Ariz. 442, 446 (1986), for the point that "a statute excluding evidence is not inevitably procedural; privilege statutes exclude highly relevant evidence but are nonetheless substantive").

¶36 Arizona's workers' compensation statutes contain six requirements that a claimant must ordinarily prove to establish that an occupational disease arises out of employment; these requirements did not change between the 2017 statute and the 2021 statute. *See* § 23-901(13)(c); § 23-901.01(A) (2017); § 23-901.01(A) (2021).

¶37 But in cases where the firefighter relies on the statutory presumption to establish that the cancer arose out of employment, the 2021 statute eliminated a defense that respondents previously had. Under the 2017 statute, respondents could defend the claim by bringing evidence that the firefighter was not exposed to a known carcinogen, as defined by the international agency for research on cancer, that is reasonably related to the firefighter's type of cancer. *See* § 23-901.01(C)(3) (2017). A successful defense would prohibit the firefighter from using the presumption and defeat fulfillment of the firefighter's obligation to establish that the cancer arose out of employment. *See* § 23-901.01(A)–(C) (2017). But under the 2021 statute, that defense is not allowed for respondents once the firefighter establishes that he or she (1) passed a physical examination before employment that did not reveal cancer, and (2) was assigned to hazardous duty for at least five years. § 23-901.09(B) (2021). The only rebuttal allowed is for respondents to show that "there is a specific cause of the cancer other than an occupational exposure to a carcinogen." § 23-901.09(E) (2021).

¶38　　　　On the other side of that same coin are the changes that the 2021 statute made to the firefighter's burden.　Under the 2021 statute, the presumption entitling the firefighter to compensation is established with the firefighter presenting evidence that he or she (1) "passed a physical examination before employment and the examination did not indicate evidence of cancer," and (2) "was assigned to hazardous duty for at least five years."　§ 23-901.09(B) (2021).　The 2021 statute entirely eliminated the firefighter's burden under the 2017 statute to also produce evidence that the firefighter was "exposed to a known carcinogen as defined by the international agency for research on cancer and informed the department of this exposure, and the carcinogen is reasonably related to the cancer." *See* § 23-901.01(C)(3) (2017); § 23-901.09(B) (2021).　While reducing the firefighter's burden, the 2021 statute simultaneously and relatedly heightened respondents' burden to rebut the presumption from "a preponderance of the evidence" to "clear and convincing evidence that there is a specific cause of the cancer other than an occupational exposure to a carcinogen."　*Compare* § 23-901.01(F) (2017), *with* § 23-901.09(E) (2021).

¶39　　　　Thus, the 2021 statute eliminated the firefighter's burden to prove exposure to a known carcinogen that is reasonably related to the cancer and placed the burden on respondents to prove, by a new heightened standard, a specific cause of the cancer other than an occupational exposure to the carcinogen.　Put differently, the 2017 statute required *firefighters* to prove the cancer *was* job-related (that through their work they were exposed to a known carcinogen that is reasonably related to the cancer), whereas the 2021 statute eliminated that burden and required *respondents* to prove the cancer *was not* job-related (that there is a specific cause of the cancer other than an occupational exposure).　Accordingly, the "true function" of the amendments was to alter the nature of a compensable claim by materially changing the elements needed to establish or defend against the presumption.　*See Seisinger*, 220 Ariz. at 93 ¶ 31.

¶40　　　　A workers' compensation law is substantive when it "creates, defines and regulates rights" to benefits.　*See Aranda*, 198 Ariz. at 470 ¶ 12 (quoting *Hall*, 149 Ariz. at 138).　The presumption in the 2021 statute substantially defines and regulates a firefighter's right to workers' compensation benefits for certain enumerated diseases, infirmities, and impairments.　It does not merely "relate[] to the manner and means by

which a right to recover is enforced" or provide "the method by which to proceed." *See id.* Accordingly, the presumption in the 2021 statute is substantive. *See Seisinger*, 220 Ariz. at 95 ¶ 40 (concluding that statute heightening the qualifications for expert witnesses testifying about standard of practice or care in medical malpractice cases is "substantive insofar as it requires a certain type of evidence to prove an element of [a] tort"); *Hall*, 149 Ariz. at 138–39 (stating that the defense of contributory negligence is a substantive legal right); *City of Littleton v. Indus. Claim Appeals Off.*, 370 P.3d 157, 165 ¶ 24, 167–68 ¶¶ 33–37 (Colo. 2016) (describing a workers' compensation statute with a presumption for firefighters as substantive in nature).

**¶41** The court of appeals cited two cases in support of its conclusion that the 2021 statute contains a procedural presumption, but they do not alter our analysis. First, in *Combs v. Commissioner of Social Security*, 459 F.3d 640, 642 (6th Cir. 2006), the Sixth Circuit analyzed "a change in a rule governing the adjudication of social security disability benefits claims" that "required more detailed proof of disability from obese claimants by eliminating a presumption of disability for obesity." The court determined that the rule change was "more procedural than substantive in nature" because "[t]he ultimate criteria of disability eligibility [were] not changed." *Id.* at 647 ("The substantive requirements for disability eligibility have not changed, only the way in which the agency goes about determining whether they are present."). Here, unlike in *Combs*, the substantive requirements for benefits eligibility have changed and the presumption in the 2021 statute is an integral and substantive part of a firefighter's right to benefits. That presumption does not merely "govern the process of administrative adjudication" of the claims. *See id.* at 642.

**¶42** Second, in *Maryland Casualty Co. v. Williams*, 377 F.2d 389, 394 (5th Cir. 1967), the Fifth Circuit analyzed presumptions in a different context—the choice of law context. There, the court noted the general rule that presumptions are procedural in nature, but it also observed that there are exceptions to this general rule. *Id.* at 394–95. One such exception is where a presumption is created in aid of the enforcement of a substantive right, such that "the substantive right as conferred and the presumption created in aid of it are so inseparably bound together." *Id.* at 395. Here, the presumption in the 2021 statute was created in aid of the firefighter's claim for workers' compensation benefits and is an integral part of that

claim.

**E.  The Substantive Right of Respondents Vests Upon The Filing Of The Workers' Compensation Claim.**

¶43        We must now determine whether the substantive right of Respondents vested, and if so when.   The timing of vesting is important because "substantive rights may not be impaired *once vested.*"   *Hall*, 149 Ariz. at 140; *see also San Carlos Apache Tribe*, 193 Ariz. at 205 ¶ 15 ("[L]egislation may not disturb vested substantive rights by retroactively changing the law that applies to completed events.").

¶44        To begin, we note that this Court provided a definition of vested rights shortly after statehood:

> Rights are vested, in contradistinction to being expectant or contingent. They are vested, when the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. They are expectant, when they depend upon the continued existence of the present condition of things until the happening of some future event. They are contingent, when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting.

*Steinfeld v. Nielsen*, 15 Ariz. 424, 465 (1913) (quoting *Pearsall v. Great N. Ry. Co.*, 161 U.S. 646, 673 (1896)).

¶45        Relying on *Steinfeld*, this Court in *Hall* concluded that a right to a defense vested when a lawsuit was filed:

> We believe that a right vests only when it is *actually assertable as a legal cause of action or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust.* The defense of contributory negligence, while a substantive right, does not vest *until a lawsuit has been filed.* Prior to that time it is merely an inchoate right which cannot be asserted until the happening of some future event. Contributory negligence is an affirmative defense which may not be asserted *until the*

16

*plaintiff has filed his lawsuit. When a lawsuit is commenced* the defendant gains an immediate fixed right to assert any substantive defense, which may not thereafter be prejudiced by the state.

*Hall*, 149 Ariz. at 140 (emphasis added) (internal citations and quotation marks omitted). The substantive right to the defense of contributory negligence vests upon the plaintiff's filing of a lawsuit because at that point, the right is no longer contingent or a mere expectancy. *Id.* at 140–41. "When a lawsuit is commenced the defendant gains 'an immediate fixed right' to assert any substantive defense, which may not thereafter be prejudiced by the state"—in other words, the right has become a present interest. *Id.* at 140 (quoting *In re Dos Cabezas Power Dist.*, 17 Ariz. App. 414, 418 (1972)). Before then, the assertion of the defense is contingent upon a future event or condition (e.g., the filing of a lawsuit) that may or may not happen. *Id.* Thus, the controlling date for vesting purposes is the filing date of a lawsuit. *Id.* at 141 ("[A]n earlier established substantive right, once vested by the filing of a lawsuit, may not be impaired." (internal quotation marks omitted) (quoting *Abrams v. Horizon Corp.*, 137 Ariz. 73, 77 (1983))).

**¶46** Indeed, "[t]he notion that rights do not vest until the commencement of legal proceedings is not new to our jurisprudence." *Id.* at 140–41 (discussing *Allen*, 118 Ariz. 95; *Gulf Homes, Inc. v. Gonzales*, 139 Ariz. 1 (App. 1983); *Bouldin*, 125 Ariz. 77; *Abrams*, 137 Ariz. 73). And this same rationale applies in the workers' compensation context. By filing a workers' compensation claim, the claimant commences a legal proceeding for obtaining an award of workers' compensation benefits. *See* A.R.S. § 23-1061. The claimant must file the claim for benefits to enable the ICA to acquire jurisdiction over the claim. § 23-1061(A). An interested party may request a hearing before an ALJ concerning the claim, and the procedures allow parties to discover and exchange information, including through interrogatories, depositions, subpoenas, medical examinations, and medical reports. *See* A.R.S. §§ 23-941, -1026, -1061; Ariz. Admin. Code R20-5-114, -131, -141 to -144, -155, -666.

**¶47** When a firefighter files a workers' compensation claim, respondents gain an immediate fixed right—that is no longer contingent or expected—to assert application of then-existing substantive law pertaining

to the statutory presumption.[4]   Indeed, if the burden of proof and standards by which a workers' compensation claim is adjudicated change while a claim is pending, this could interfere with respondents' ability to evaluate, investigate, respond to, and defend against the claim, including the discovery and collection of evidence in reliance on existing law when the claim was filed.

¶48        Vande Krol filed his workers' compensation claim in January 2021—eight months before the 2021 statute became effective.   Like the filing of the lawsuit in *Hall*, Vande Krol's filing of the workers' compensation claim fixed the substantive right of Respondents to assert the applicability of the 2017 statute in effect at that time—namely, that (1) the burden to establish a key factor of causation was on Vande Krol for him to successfully invoke the statutory presumption, and (2) Respondents could rebut that presumption by a preponderance of the evidence that there is a specific cause of the cancer other than occupational exposure to a carcinogen.   This right vested when Vande Krol filed his workers' compensation claim because the presumption and rebuttal in the 2017 statute were "actually assertable" at that time.   *See Hall*, 149 Ariz. at 140.

¶49        Further, suddenly removing Respondents' right to assert the applicability of the 2017 statute in the middle of its pending case and just days before the start of the evidentiary hearing would be manifestly unjust. *See San Carlos Apache Tribe*, 193 Ariz. at 205 ¶ 15 (concluding that a vested right is one that is "actually assertable as a legal cause of action or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust" (quoting *Hall*, 149 Ariz. at 140)).

¶50        For these reasons, we disagree with Vande Krol and amici that the substantive right of respondents remains contingent until the firefighter presents sufficient evidence to meet the threshold requirements of the statutory presumption in the first place.   The contingent right becomes fixed before that point—when the workers' compensation claim is first filed.

---

[4]   *Aranda* explained that a "substantive property right in workers' compensation payments vested once the Industrial Commission's Findings and Award became final," but this was referring to a "vested right in the claimants to receive the monthly disability benefits"—not a vested right of respondents which is the issue before us.   198 Ariz. at 472–73 ¶ 27.

¶51        Finally, the hearing date or date of adjudication is not when a substantive right vests.   *See In re Shane B.*, 198 Ariz. 85, 87 ¶ 7 (2000) ("Courts look to the date of the offense, rather than the date of adjudication, to determine retroactivity of application.").   These dates are often in flux during the pendency of a claim and are too arbitrary to determine when a right vests.

## F.  Arizona Law Requires Application Of § 1-244 In This Case.

¶52        Our dissenting colleague contends that the 2021 statute is "clear and unambiguous" and that it applies to claims, like Vande Krol's, that were pending but not yet adjudicated when the 2021 statute became effective.   *Infra* ¶¶ 62, 67, 71–74.   The dissent points to a provision in the 2021 statute stating that the presumption "applies to both of the following": (1) firefighters currently in service, and (2) former firefighters who are sixty-five or younger and diagnosed with cancer not more than fifteen years after the firefighter's last date of employment.   § 23-901.09(C) (2021).   This text, according to the dissent, reflects "the manifest intent of the legislature" that the 2021 statute applies to claims pending but unadjudicated as of its effective date.   *Infra* ¶ 74; *see* A.R.S. § 1-211(A).   For this reason, the dissent believes a statement of retroactivity in the 2021 statute was not necessary for it to apply to Vande Krol's claim.   We disagree.

¶53        The general "applies to" text in the 2021 statute does not make it clear and unambiguous that the legislature intended judges to begin applying the 2021 statute on its effective date, even to claims that had been filed many months before.   Although the 2021 statute says "it applies" to designated classes of firefighters, it does not say *when* it applies.   In drafting other statutes with "applies to" text, the legislature has made clear *when* application of a new statutory provision is to begin.   In particular, the legislature has specified when a new statutory provision is intended to apply to claims that are pending as of its effective date.   *See, e.g.*, 2012 Ariz. Sess. Laws ch. 109, § 2(B) (2d Reg. Sess.) ("*This act applies to* all asbestos claims that are filed against a successor corporation on or after the effective date of this act and to *any pending asbestos claims against a successor corporation in which trial has not commenced as of the effective date of this act*, except that any provision of this act that would be unconstitutional if applied retroactively shall be applied prospectively." (emphasis added)); 1997 Ariz. Sess. Laws ch. 259, § 2 (1st Reg. Sess.) ("Section 1 of this act *applies*

*to all actions pending on the effective date of this act.*" (emphasis added)); 1992 Ariz. Sess. Laws ch. 165, § 14 (2d Reg. Sess.) (stating the exemption "*applies to all actions now pending* or brought on or before January 1, 1994" (emphasis added)); 1976 Ariz. Sess. Laws ch. 170, § 26(2) (2d Reg. Sess.) (stating that "[t]his act *applies to any proceedings in court then pending*" with certain exceptions (emphasis added)). The legislature has made the timing of such application clear in other contexts as well—for example, "on or after the effective date of" the statute, "before or after" a specific date, or "on or after" a specific date. *See, e.g.*, A.R.S. § 8-386.01(E); A.R.S. § 12-3403; A.R.S. § 14-12503; A.R.S. § 14-6311; A.R.S. § 20-1231(H); A.R.S. § 33-2201; A.R.S. § 44-7004; A.R.S. § 47-7703. The legislature has also specified such timing in the workers' compensation context. *See* 2018 Ariz. Sess. Laws ch. 175, § 2 (2d Reg. Sess.) ("This act applies to workers' compensation policies issued or renewed on or after July 1, 2019."). Here, one thing is clear: the legislature did *not* state that the 2021 statute applied to pending workers' compensation claims in which a hearing had not commenced as of the 2021 statute's effective date.

¶54 The dissent correctly observes that Arizona's Constitution directs the legislature to enact a workers' compensation law, *see* Ariz. Const. art. 18, § 8, and that this Court has pronounced that we construe our workers' compensation laws "with a view of effectuating their evident purpose of placing the burden of injury and death upon industry." *Peter Kiewit Sons' Co. v. Indus. Comm'n*, 88 Ariz. 164, 173 (1960) (quoting *Nicholson v. Indus. Comm'n*, 76 Ariz. 105, 108 (1953)). But had the legislature intended to make the 2021 statutory presumption applicable to pending but unadjudicated claims as of its effective date, it would have made such timing clear, as it has before. It did not do so in the 2021 statute, and thus we cannot ignore the legislature's explicit direction in § 1-244 that "[n]o statute is retroactive unless expressly declared therein."

¶55 The dissent argues that *Schuster* supports a conclusion that the 2021 statute applies to Vande Krol's claim. In *Schuster*, the statute at issue provided that a divorce may be granted when the husband and wife "have not lived or cohabited together" for five years. 42 Ariz. at 199. This Court determined such text "clearly refers to the past as well as to the future" and meets the requirement of express retroactivity. *Id.* But "have not lived or cohabited" (past and future tense) is different than the 2021 statute's "applies to" text that does not clearly refer to the past. Thus, *Schuster* does not support application of the 2021 statute to Vande Krol's

claim.

¶56          Further, the dissent emphasizes that Vande Krol's claim was unadjudicated as of the effective date of the 2021 statute. But the record in this case illuminates why using an adjudication date as the cutoff date can present a manifest injustice. Vande Krol's hearing was originally scheduled to begin on August 3, 2021—nearly two months *before* the effective date of the 2021 statute. Then, just two weeks before the hearing, Vande Krol requested a 90-day continuance because he had recently retained an attorney. The hearing was rescheduled to commence on October 5, 2021—*after* the effective date of the 2021 statute. If the adjudication date were the defining line, this would be manifestly unjust to Respondents, who prepared their defense relying on the 2017 statute. And if we hinged retroactivity on the serendipity of where parties are in the litigation process, it could invite gamesmanship by respondents and claimants in future cases.

¶57          Relatedly, the dissent argues that Respondents were on notice of the 2021 statute's enactment and that between the enactment and the hearing, nothing prevented them from "reconsidering Vande Krol's claim or the arguments they intended to present at his hearing" and they could have requested a continuance. *Infra* ¶ 87. But applying the 2021 statute would incorrectly divest Respondents of a vested substantive right conferred by the 2017 statute. *See San Carlos Apache Tribe*, 193 Ariz. at 205 ¶ 15. Thus, whether they had adequate notice of the statutory change is irrelevant. Regardless, Respondents cannot be deemed dilatory or penalized in this manner because the hearing date was supposed to commence before the 2021 statute's effective date.

¶58          The dissent also points out that, in 2021, the legislature made amendments to title 20 that generally permitted insurers to raise statewide insurance rates and adjust premiums related to firefighter workers' compensation claims brought under the presumption. *See* 2021 Ariz. Sess. Laws ch. 229, §§ 1–3, 8 (1st Reg. Sess.). While these amendments recognized that the cost of claims would increase with the 2021 statutory presumption, they did not articulate *when* those claims would begin increasing, and certainly did not state they would begin rising with then–pending cases. These amendments could simply mean that insurers may increase their rates to cover anticipated increased costs due to claims filed *after* the effective date of the 2021 statute. Indeed, allowing insurers

to adjust rates for anticipated increases in payouts seems to be forward-looking rather than indicating retroactivity. Nonetheless, the legislature's decision to allow for rate adjustments does not address the fact that the 2021 statute substantively impacted Respondents' ability to defend *this specific claim*.

**¶59** Further, the dissent minimizes *Landgraf*'s fundamental unfairness principles in this case because of the different factual circumstances before us. But the "settled expectations" at issue here are just as pronounced as in *Landgraf*. 511 U.S. at 265. Requiring a respondent to set aside the 2017 statutory presumption and proceed under the 2021 statutory presumption mere days before the hearing would disrupt its "settled expectations." When a claim is filed, a respondent relies on existing law—including the elements of the claim and defense and the burden of proof on each party—to decide whether to accept or deny that claim. In preparing for a hearing, a respondent relies on such existing law to evaluate the exact questions to ask in a deposition, the particular documents to obtain through subpoenas, and the specific information to request in interrogatories. Reducing a firefighter's burden to establish causation in a way that eliminates a defense mere days before a hearing works a fundamental injustice to a respondent. *See Cravens, Dargan & Co. v. Superior Court*, 153 Ariz. 474, 476 (1987) ("Fair notice and hearing are fundamental and elementary requirements of due process."). Indeed, an essential component of due process is its promise that statutes give people fair notice of what the law is and what it demands of them. *See United States v. Davis*, 588 U.S. 445, 451 (2019).

**¶60** The dissent also minimizes the impact of the particular presumption before us, arguing that "there is no such thing as a 'rebuttable presumption defense' to a workers' compensation claim." *Infra* ¶ 84. But when a firefighter invokes this statutory presumption in a workers' compensation case, it is precisely how that firefighter establishes causation. In other words, it *is* causation. And most certainly, parties may—and frequently do—defend legal claims based on lack of causation.

## CONCLUSION

**¶61** We hold that the 2017 statute applies to Vande Krol's workers' compensation claim. We vacate the court of appeals' opinion. Because the court of appeals concluded that the 2021 statute applied, it did

"not address whether the ALJ correctly interpreted the 2017 statute." *Vande Krol*, 255 Ariz. at 505 ¶ 43.   We did not take review of that issue and therefore remand to the court of appeals to determine whether the ALJ correctly interpreted and applied the 2017 statute to Vande Krol's claim.

MONTGOMERY, J., dissenting.

**¶62** The clear and unambiguous terms of A.R.S. § 23-901.09, as amended in 2021, apply to Vande Krol's claim for compensation, and any requirement for a statement of retroactivity is unwarranted given the prescriptions of A.R.S. § 1-211, the nature of the Workers' Compensation Act ("WCA"), and article 18, section 8 of the Arizona Constitution. I therefore respectfully dissent.

### TEXT OF § 23-901.09

**¶63** "We 'determine the plain meaning of the words the legislature chose to use, viewed in their broader statutory context.'" *In re Drummond*, 257 Ariz. 15, 18 ¶ 5 (2024) (quoting *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 255 Ariz. 382, 385 ¶ 11 (2023)). When a statute's plain language is unambiguous it is dispositive, *id.*, and "we do not resort to other canons of statutory interpretation," *Stambaugh v. Killian*, 242 Ariz. 508, 511 ¶ 17 (2017).

**¶64** As amended in 2021, § 23-901.09(A)(1) provides: "Any disease, infirmity or impairment of a firefighter's . . . health that is caused by brain . . . cancer . . . and that results in disability or death is presumed to be an occupational disease . . . and is deemed to arise out of employment." § 23-901.09(A)(1) (2021) (the "Presumption"). The Presumption applies if the two conditions set forth in § 23-901.09(B) are met: the firefighter must have (1) "passed a physical examination before employment and the examination did not indicate evidence of cancer"; and (2) been "assigned to hazardous duty for at least five years." And § 23-901.09(C) specifies that the Presumption applies to firefighters who are: 1) currently in service, and 2) aged sixty-five or younger and diagnosed with brain cancer not more than fifteen years after their last date of employment as a firefighter. Lastly, the 2021 amendments ("Amendments") also eliminated a third condition that the firefighter has been "exposed to a known carcinogen," provided notice of the exposure, and that "the carcinogen [wa]s reasonably related to the cancer." § 23-901.01(C)(3) (2017).

**¶65** Relatedly, the Amendments changed the standard of proof required to rebut the Presumption. Enacted in 2017—sixteen years after the Presumption was first enacted as § 23-901.01(B) (2001)—the legislature

24

initially permitted the Presumption to "be rebutted by a preponderance of the evidence that there is a specific cause of the cancer other than an occupational exposure to a carcinogen." § 23-901.01(F) (2017). Clear and convincing evidence is now required. § 23-901.09(E) (2021).

¶66 The Amendments also made changes to sections of title 20 that permitted insurers to raise statewide insurance rates and adjust premiums related to firefighter workers' compensation claims brought under the Presumption. *See* 2021 Ariz. Sess. Laws ch. 229, §§ 1–3 (1st Reg. Sess.). Furthermore, the legislature specifically noted that it intended the changes to A.R.S. § 20-359 to "authorize workers' compensation insurers covering firefighters . . . to modify *previously filed* premium rates *to cover anticipated increased claims costs resulting from the new coverages to be afforded those insureds pursuant to section 23–901.09*, Arizona Revised Statutes, *as added by this act*." *Id.* § 8 (emphasis added). Because the class of firefighters "insured pursuant to § 23-901.09" is only limited by the requirements of § 23-901.09(B), it is incongruent for the reasons that follow to conclude that the legislature did not expect § 23-901.09 to be applied to insureds such as Vande Krol—without regard to when a claim was filed.

¶67 There is nothing in the text of the amended statutory framework, or in any of the other provisions of the Amendments, that conditions application of the Presumption based on the date of an injury or when a compensation claim is filed. The only limitation based on timing is that the firefighter must be "diagnosed with a brain cancer not more than fifteen years after the firefighter's last date of employment."[5] And even though the 2021 statute may relate to antecedent facts or conditions (i.e., age, date of diagnosis, last date of employment), this does not require retroactive application. *See Tower Plaza Invs. Ltd. v. DeWitt*, 109 Ariz. 248, 250 (1973) ("[A] statute is not retroactive in application simply because it may relate to antecedent facts."); *see also Cohen v. State*, 121 Ariz. 6, 9 (1978) ("[L]aws are not retrospective by their mere relation to antecedent conditions."); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 273 (1994) ("When

---

[5] Of note is the fact that the stated purpose for including the fifteen-year diagnosis limitation in 2017 was to "[l]imit application of *new and existing* cancer presumptions to conditions diagnosed *within 15 years of* a firefighter's or peace officer's *last date of employment*." *See* Ariz. State Senate Fact Sheet for H.B. 2161, 53d Leg., 1st Reg. Sess. (May 25, 2017) (emphasis added). No such concern is expressed in the Amendments.

the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive."). Additionally, we have long recognized that workers' compensation matters are adjudicated in a legislatively established forum that has "the right to determine questions of fact *and to apply the existing law thereto* in matters within the jurisdiction conferred upon it by the [WCA]." *Fed. Mut. Liab. Ins. Co. v. Indus. Comm'n*, 31 Ariz. 224, 228 (1926) (emphasis added). Simply put, there is nothing to preclude application of the Presumption to Vande Krol's claim that was unadjudicated as of the effective date of the Amendments.

¶68 This would not be the first time our Court has recognized that a statute applies "to situations existing when it was passed." *Schuster v. Schuster*, 42 Ariz. 190, 199 (1933). For example, in *Schuster* we held that a statute that allowed a couple to obtain a divorce if they had not lived together for five years encompassed the time a couple had not lived together *before* the statute was passed. *Id.* at 192, 199. Despite the statute not containing an express statement of retroactivity, we dismissed the argument that the five-year period of separation must take place after the statute was enacted because the statute was meant to apply to situations already existing upon enactment. *Id.* at 199.

¶69 In this regard, the text of § 23-901.09(B) is due more consideration than the majority gives it. *See supra* ¶ 55. As further discussed below concerning issues of fairness, since 2001, the Presumption has referred to the past and the future by permitting a claim for an injury that occurred during a *past* hazardous assignment but was not diagnosed for as many as fifteen years *after* a last date of employment.

¶70 Conversely, in cases like *Aranda v. Industrial Commission*, 198 Ariz. 467, 470 ¶ 10 (2000), and *City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, 547–48 ¶¶ 11–12 (2005), the Court was squarely presented with issues regarding retroactivity, though neither case applied A.R.S. § 1-244 to the detriment of the party aggrieved. In *Aranda*, the Court considered a law that suspended workers' compensation benefits for incarcerated adults or juveniles. 198 Ariz. at 469 ¶ 4. Retroactivity was thus at issue because the Court had to consider "the applicability of [the statute] to pre-determined, final compensation awards." *Id.* at 470 ¶ 9. Additionally, the legislature provided for an effective date later than what

would otherwise have been in place. *Id.* ¶ 10. Here, however, the Amendments were enacted with an effective date before there was any adjudication of Vande Krol's compensation claim and without any intent, implicit or otherwise, to affect adjudicated claims.

**¶71** In *Clear Channel*, the facts and law required the Court to consider the retroactive application of a statute because it did not address whether a statute of limitations period applied to existing claims at the time of its enactment. 209 Ariz. at 547 ¶ 10 (reviewing A.R.S. § 9-462.02(C), which established a statute of limitations for municipal actions in zoning matters regarding nonconforming billboards). If the statute of limitations applied, the new law would *preclude adjudication* of such claims. *Id.* ¶¶ 9–10. Accordingly, this Court declined to read the statutory provisions as applying to claims filed prior to the statute's effective date. *Id.* at 548–50 ¶¶ 15–19. Here, we are faced with whether the Amendments apply to a claim *prior to any adjudication*.

**¶72** Despite the clear import of the text of § 23-901.09 establishing that the Amendments apply to existing claims not yet adjudicated at the time the Amendments were enacted, the majority nevertheless invokes § 1-244 and the related procedural/substantive analysis to require a retroactivity statement for application of the Presumption to Vande Krol's compensation claim. This is unwarranted and contrary to Arizona law.

## A.R.S. § 1-211 PRECLUDES RECOURSE TO § 1-244

**¶73** Section 1-244 provides that "[n]o statute is retroactive unless expressly declared therein." In addition to the fact that § 23-901.09 is not being retroactively applied in this case, reliance on § 1-244 is unwarranted because of § 1-211. *See supra* ¶ 52.

**¶74** Section 1-211(A) directs that: "The rules and the definitions set forth in this chapter shall be observed in the construction of the laws of the state *unless such construction would be inconsistent with the manifest intent of the legislature.*" (Emphasis added.) *See also State v. Allred*, 102 Ariz. 102, 103 (1967) (discussing § 1-211 and stating that "[a]ll other rules of statutory construction are secondary and are to be used only to aid in the proper application of [§ 1-211]"). As set forth above, the manifest intent of the legislature, as reflected in the plain meaning of the Amendments, renders

§ 23-901.09 applicable to workers' compensation claims pending as of the effective date. Applying § 1-244 as the majority does results in a construction of § 23-901.09 that is inconsistent with the manifest intent of the legislature and contrary to § 1-211. Additionally, § 1-211(B) requires that "[s]tatutes shall be liberally construed to effect their objects and to promote justice."[6] And interpreting the Amendments to apply § 23-901.09 to Vande Krol's compensation claim comports with the WCA.

## THE WCA AND THE CONSTITUTION

¶75        Delegates to the Arizona Constitutional Convention in 1910 expressly sought to redress the plight of injured workers. *See Grammatico v. Indus. Comm'n*, 211 Ariz. 67, 70–71 ¶¶ 10–17 (2005) (discussing history and development of workers' compensation in Arizona); *see also The Records of the Arizona Constitutional Convention of 1910*, at 881–87 (John S. Goff ed., 1991); John D. Leshy, *The Making of the Arizona Constitution*, 20 Ariz. St. L.J. 1, 92–95 (1988); J. Wagoner, *Arizona Territory 1863–1912: A Political History* 460–64 (1970). And in 1925 the people of Arizona amended article 18, section 8 to direct the legislature to extend the benefits of the WCA to public employees and enact further reforms "which provided the most generous state compensation benefits nationally for that era." Sandra A. Day, *How Did We Get Here? The Development of Arizona Workers' Compensation Law*, 36 Ariz. Att'y 10, 11 (Apr. 2000). "Any conflict between an employer and employee was to be resolved in an informal administrative setting designed to ensure the quickest and most direct route to any required decision-making." *Id.* at 45.

¶76        Furthermore, we read the provisions of the WCA in light of article 18, section 8 of the Arizona Constitution. *See Roberts v. Spray*, 71 Ariz. 60, 70 (1950) (noting that when statutes and the Constitution "relate to the same subject, like statutes in pari materia, they are to be construed together" (quoting *Cooper Mfg. Co. v. Ferguson*, 113 U.S. 727, 733 (1885))). And "[i]n construing [the WCA and article 18, section 8] there are certain

---

[6]  In the context of the WCA, "[a] liberal construction is not synonymous with a generous interpretation . . . . It is not in the power of this court to 'give' but it definitely is its duty to interpret the law to insure that what the law gives is not withheld." *Nicholson v. Indus. Comm'n*, 76 Ariz. 105, 109 (1953).

principles which we must always keep before us: They must be considered as a whole so as to effectuate the purpose of the legislature and of the people as set forth in the constitution and the Act, and, so far as statutes are concerned, are to be construed liberally and remedially." *Pressley v. Indus. Comm'n*, 73 Ariz. 22, 28 (1951); *see also Atkinson, Kier Bros., Spicer Co. v. Indus. Comm'n*, 35 Ariz. 48, 50, 52–54 (1929) (discussing enactment of the 1925 amendment extending compensation under the then-effective version of the WCA to a broader class of workers); *Marquez v. Rapid Harvest Co.*, 1 Ariz. App. 562, 565 (1965) ("We must read the Act in the light of the Constitution and adopt the construction which harmonizes with constitutional provisions."). As relevant here, article 18, section 8 of the constitution provides that:

> The legislature shall enact a workmen's compensation law applicable to workmen engaged in manual or mechanical labor in all public employment whether of the state, or any political subdivision or municipality thereof as may be defined by law . . . by which compensation shall be required to be paid to any such workman, in case of his injury and to his dependents, as defined by law, in case of his death, by his employer, if in the course of such employment personal injury to or death of any such workman from any accident arising out of and in the course of, such employment, is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof . . . and, provided further, in order to assure and make certain a just and humane compensation law in the state of Arizona, for the relief and protection of such workmen, their widows, children or dependents, as defined by law, from the burdensome, expensive and litigious remedies for injuries to or death of such workmen, now existing in the state of Arizona, and producing uncertain and unequal compensation therefor, such employee, engaged in such private employment, may exercise the option to settle for compensation by failing to reject the provisions of such workmen's compensation law prior to the injury . . . .

¶77          With respect to our jurisprudence concerning the WCA, we have been just as clear as the text of § 23-901.09: "We believe the decisions,

English and American, are agreed that the compensation laws should be given a liberal construction, with a view of effectuating their evident purpose of placing the burden of injury and death upon industry, and we are in entire accord with that construction." *Ocean Accident & Guarantee Corp. v. Indus. Comm'n*, 32 Ariz. 265, 271–72 (1927); *see also Dunn v. Indus. Comm'n*, 177 Ariz. 190, 194 (1994) ("The workers' compensation laws should be construed with a view toward advancing the purpose of placing the burden of injury and death upon industry."). Thus, "[n]o rule is to be adopted and applied which will make ineffectual the evident purpose of the law that those covered by the act who are injured while engaged in industrial work are to be compensated." *Goodyear Aircraft Corp. v. Indus. Comm'n*, 62 Ariz. 398, 402 (1945); *see also Carbajal v. Indus. Comm'n*, 223 Ariz. 1, 3 ¶ 10 (2009) ("When construing workers' compensation statutes, we favor interpretations that make the claimant whole."); *Unigard Mut. Ins. Co. v. Martin*, 134 Ariz. 144, 147 (App. 1982) ("In workmen's compensation proceedings, the objective is to have industry fully bear its share of human injury as a cost of doing business, and the compensation law is liberally construed to achieve that objective.").

¶78        Thus, our constitution, statutes, and our own precedent recognize that the burden under the workers' compensation scheme is on the *employer*. *See Ocean Accident*, 32 Ariz. at 272 (explaining that the workers' compensation scheme "requir[es] the employer to compensate . . . injuries that arise out of and in the course of the employment"). Applying § 23-901.09 to Vande Krol's claim is entirely consistent with the overall function of workers' compensation legislation.

## OTHER RETROACTIVITY CONCERNS

¶79        The majority's analysis echoes Respondents' arguments that the Amendments impermissibly "diminish[] an employer's right to defend against" a claim that arose, but was not adjudicated, before the Amendments being enacted, while eliminating the need for an employee to prove that an injury "arose out of and was incurred during the course and scope of employment." In addition to addressing Respondents' arguments, the majority also considers whether applying § 23-901.09 as amended to Vande Krol's claim would comport with principles of fairness or constitute a manifest injustice.

**¶80** The majority initially relies on *Landgraf* to address these concerns with a purportedly retroactive application of § 23-901.09. But rather than support the majority's analysis and conclusion, *Landgraf* illustrates why retroactivity principles are not at issue here concerning fairness. Additionally, *Hall v. A.N.R. Freight Sys., Inc.*, 149 Ariz. 130 (1986), demonstrates that this case neither implicates Respondents' ability to mount a defense nor results in a manifest injustice.[7]

**A.  Elementary Considerations Of Fairness.**

**¶81** *Landgraf* addressed whether certain statutory provisions applied to a matter "that was pending on appeal" when Congress enacted the legislation in question. *Landgraf*, 511 U.S. at 247. After discussing differing canons of construction that could be applicable in the case,[8] the Court discussed the point that "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.* at 264–65. We must, though, consider this proposition carefully in the context of the WCA.

**¶82** In the context of the WCA and workers' compensation, "settled expectations" are not even remotely similar to those in *Landgraf* such that considerations of fairness implicate the presumption against retroactivity. In *Landgraf*, the concern was the increase in damages a plaintiff could seek due to a discriminatory discharge by an employer. *Id.* at 253–54. In addition to backpay, the amendments in question permitted compensatory damages and punitive damages under certain circumstances. *Id.* The Court characterized the changes as "effect[ing] a

---

[7] Additionally, neither *Hall* nor any other Arizona cases relied on by the majority acknowledge § 1-211 nor do they invoke § 1-244 to the detriment of an employee under the WCA.

[8] The first canon provides that "a court is to apply the law in effect at the time it renders its decision." *Landgraf*, 511 U.S. at 264 (quoting *Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696, 711 (1974)). "The second is the axiom that '[r]etroactivity is not favored in the law,' and its interpretive corollary that 'congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.'" *Id.* (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)).

major expansion in the relief available to victims of employment discrimination." *Id.* at 255.

**¶83** With respect to the WCA and § 23-901.09, firefighter employers are already on notice that past conduct of which they were unaware may later result in an award of compensation. Indeed, § 23-901.09(C)(2)'s allowance of claims for brain cancer diagnoses arising within fifteen years following employment makes it clear that there are potential activities that may have taken place early in a firefighter's career that an employer had no knowledge of and cannot address that will result in a compensation award for brain cancer in the future. This limitation reflects the settled understanding that compensation for work-related injuries in the context of the inherently risky and hazardous occupation of firefighting may not arise from circumstances that the employer had specific advance notice of to guard against in the first place. It is the very nature of the WCA to require that "*industry must bear the burden . . . . This was the intent and the purpose of sections 3–8, art. 18, of our Constitution.*" *Oatman United Gold Min. Co. v. Pebley*, 31 Ariz. 27, 32 (1926) (emphasis added).

## B.  No Denial Of The Right To A Defense.

**¶84** The majority errs in relying on the changes to the Presumption to conclude that the Amendments divested Respondents of a vested right. As noted by the majority, *Hall* stands for the proposition "that a right vests only when it is *actually assertable* as a *legal* cause of action or *defense or is so substantially relied upon* that retroactive divestiture would be manifestly unjust." 149 Ariz. at 140 (emphasis added). But, unlike the contributory negligence defense under review in *Hall*, this case involves changes to a rebuttable presumption under the WCA that did not eliminate a defense. And there is no such thing as a "rebuttable presumption defense" to a workers' compensation claim. *Cf. Obregon v. Indus. Comm'n*, 217 Ariz. 612, 613 ¶ 5 (App. 2008) (reviewing a suspended benefits claim due to employee's *criminal conviction* for fraudulently seeking to obtain compensation benefits pursuant to A.R.S. § 23-1028); *Glodo v. Indus. Comm'n*, 191 Ariz. 259, 261 (App. 1997) (reviewing whether claim was properly denied pursuant to A.R.S. § 23-1021(A) because injury was "purposefully self-inflicted"); *see also* 100A C.J.S. *Workers' Compensation* § 1012 (2024) ("Among the affirmative defenses that must be raised in a

workers' compensation case are waiver, estoppel, a claim of setoff, fraud, intoxication, and abandonment of treatment."); 3 *Modern Workers Compensation* § 305:7 (2024) ("An employee claiming workers' compensation benefits generally has the burden of proving that at the time of the injury giving rise to his or her claim, he or she was an employee.").

¶85 Here, Respondents defended against Vande Krol's claim by arguing that he was unable to prove that his brain cancer arose out of and in the course of his employment as a firefighter. The argument further rests on the assertion that Vande Krol cannot establish the requirements for the 2017 version of the Presumption. With respect to the Amendments, the Presumption is just as rebuttable as it was under the lower standard of proof in 2017 and Respondents can still argue causation. *See supra* ¶ 60. Accordingly, the amendments did not take away a "defense" from Respondents or any other substantive right.

## C.    No Manifest Injustice.

¶86 There is also no "manifest injustice" to Respondents in applying the Presumption to Vande Krol's pending claim. *Hall*, 149 Ariz. at 140. Given the nature of the WCA, article 18, section 8, and the expressed intent of the legislature to address "anticipated increased claims costs resulting from new coverages to be afforded those insureds pursuant to section 23-901.09," the workers' compensation system is functioning as expected. *See Magma Copper Co. v. Gonzales*, 62 Ariz. 9, 13 (1944) ("It should be remembered that the [workers' compensation] law does not rest upon fault but upon the thesis that the occupation or business or art should bear the human wear and tear incident to its prosecution at least to a large extent."); *Marriott Corp. v. Indus. Comm'n*, 147 Ariz. 116, 121 (1985) ("[It is] the long held view that the purpose of the workers' compensation system is to dispense with, as much as possible, the litigation between employer and employee and to place upon industry the burden of compensation. The protection of a workers' compensation system is constitutionally mandated." (internal citation and footnote omitted)).

¶87 Lastly, Respondents were on notice as of the enactment of the Amendments that claims involving brain cancer were going to be easier for firefighters to establish. *Cf. Wilco Aviation v. Garfield*, 123 Ariz. 360, 362 (App. 1979) ("Here, the enactment of A.R.S. § 10-095 places appellees upon

notice that if they wish to reinstate their corporate charter, they had best do so before the new statute becomes effective."). Between the time of enactment and the hearing, nothing in the record indicates Respondents were prevented from reconsidering Vande Krol's claim or the arguments they intended to present at his hearing. Likewise, there is nothing in the record that indicates Respondents could not have requested their own continuance.[9] And, as noted, the legislature permitted insurance carriers to adjust premiums based on changes to § 23-901.09, expressly acknowledging the possibility of increasing claim costs. Thus, the fact that § 23-901.09(A)(1) operates to make it easier for Vande Krol to receive compensation is consistent with the WCA and does not result in a disadvantage or unfairness to Respondents let alone any manifest injustice for retroactivity purposes.

**CONCLUSION**

¶88 Section 23-901.09, like all legislation born from article 18, section 8, necessarily operates with the intent and purpose to compensate as many employees as are qualified under the WCA. Moreover, this interpretation and application of § 23-901.09 advances the remedial purpose of the WCA. Thus, consistent with § 1-211, we cannot ignore the fact that the Amendments contain provisions that necessarily cover firefighters whose injuries arose under conditions existing prior to the effective date of the Amendments, as well as the fact that the legislature made allowances for the expected increase in claims costs that an award for Vande Krol entered after the effective date would necessarily fall within.

¶89 Accordingly, I would affirm the court of appeals' conclusion, albeit with different reasoning, and set aside the ALJ's decision.

---

[9] And to be fair to Vande Krol, the continuance he requested was for his recently retained attorney to be prepared for a contested hearing at which Respondents were represented by counsel.